Steven W. Ritcheson, Esq. (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
*swritcheson@insightplc.com*

**Attorney for Plaintiff
Sapphire Crossing LLC**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SAPPHIRE CROSSING LLC,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**EVERNOTE CORPORATION,**<br><br>　　　　Defendant. | Case No. _____<br><br>**Jury Trial Demanded**<br><br>**COMPLAINT FOR PATENT INFRINGEMENT** |

Plaintiff Sapphire Crossing LLC ("Sapphire Crossing"), by and through its attorney, files this Complaint against Defendant Evernote Corporation ("Evernote") and alleges the following:

**PARTIES**

1. Plaintiff Sapphire Crossing LLC is a corporation organized and existing under the laws of Texas and maintains its principal place of business at 5570 FM 423 Suite 250, #2008, Frisco, TX 75034.

2. Defendant Evernote Corporation is a corporation organized and existing under the laws of California and maintains its principal place of business at 305 Walnut Street, Redwood City, CA 94063.

**JURISDICTION**

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

4. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1338(a).

5. This Court has personal jurisdiction over Evernote because it has engaged in systematic and continuous business activities in the Northern District of California. Specifically, Evernote resides in this District as it is incorporated in California, is headquartered in this District, and provides its full range of services to residents in this District. As described below, Evernote has committed acts of patent infringement giving rise to this action within this District.

**VENUE**

6. Venue is proper in this District under 28 U.S.C. § 1400(b) because Evernote has committed acts of patent infringement in this District and resides in this District. Specifically, Evernote is incorporated in this District and provides its full range of services to residents in this District. In addition, Sapphire Crossing has suffered harm in this District.

**PATENT-IN-SUIT**

7. On May 10, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,891,633 ("the '633 Patent") to Xerox Corporation ("Xerox"), naming Ken Hayward, Marc J. Krolczyk, Dawn M. Marchionda, Thomas L. Wolf and James S. Laird as the inventors. The application leading to the '633 Patent was filed on July 30, 1999. The '633 Patent is titled "Image Transfer System."  A copy of the '633 Patent is attached to this Complaint as **Exhibit A**.

8. Claims 19-20 of the '633 Patent (hereinafter, the "Asserted Claims") are valid and enforceable and are infringed by Defendant.  Attached as **Exhibit B** is a claim chart depicting the details of Defendant's infringement of the Asserted Claims.

9. The Patent Trial and Appeal Board ("PTAB") denied institution of Claims 19-20 and further denied Petitioner's request for a rehearing. Attached as **Exhibit C** is a copy of the PTAB's decision.

10. On November 25, 2015, Xerox assigned all right, title, and interest in and to the '633 Patent to Ruby Sands LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '633 Patent.

11.     On March 26, 2018, Ruby Sands LLC assigned all right, title, and interest in and to the '633 Patent to Sapphire Crossing LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '633 Patent. Accordingly, Sapphire Crossing possesses the exclusive right and standing to prosecute the present action for infringement of the '633 Patent by Defendant.

12.     The '633 Patent is directed to a novel image transfer system comprising a transfer device which can be operably connected to a computer. The system includes a reader for reading an image on a first medium, and a display for displaying an image transfer menu for effecting transfer of the image to perform a selected function. For example, the reader can be a mobile electronic device used to take a photograph of a first medium (for example, a receipt), and then offer on the display of the mobile electronic device a menu of different actions that can be selected to accomplish a particular task: for example, get cash rebates from digital coupons based on scanned receipts. A downloadable app can transform the mobile device into the claimed image transfer device. Without the app, the mobile device cannot display the first type of menu, read the receipt, establish a connection with a computer, transfer the image to the computer, or display the second type of menu.

13.     Claim 19 of the '633 Patent is directed to a method for transferring information from a first medium wherein the method provides an image transfer device having a scanner for reading an image on the first medium (for example a smartphone); the image transfer device reads the image on the first medium with the scanner (for example taking a picture with the smartphone); the image transfer device then uploads the electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device; and a processor of the image transfer device automatically merges the electronic data with the image read by the scanner and transfers the merged image by the transfer device to a second medium (for example servers).

### CLAIMS 19 AND 20 OF THE PATENT-IN-SUIT

14.     The Asserted Claim 19 of the '633 Patent recites the following:

| **Claim 19** |
|---|
| 19. A method for transferring information from a first medium, the method comprising the steps of:<br><br>providing an image transfer device having a scanner for reading an image on the first medium;<br><br>reading the image on the first medium with the scanner;<br><br>automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;<br><br>with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and<br><br>transferring the merged image by the transfer device to a second medium. |

*See* **Exhibit A**.

15.     The Asserted Claim 20 of the '633 Patent recites the following:

| **Claim 20** |
|---|
| 20. A method in accordance with claim **19**, wherein the electronic data uploaded from the computer to the image transfer device stays with the image transfer device after the computer is disconnected from the image transfer device. |

*See* **Exhibit A**.

16.     As noted in the section above, the application leading to the issuance of the Patent-in-Suit was filed on July 30, 1999.

### THE MERGING STEP CAPTURES AN INVENTIVE CONCEPT, WHOSE IMPLEMENTATION IS DETAILED IN THE SPECIFICATION.

17.     Claims 19 and 20 (dependent upon 19) recite "with a processor of the image transfer device, **automatically merging the electronic data with the image read by the scanner**," where "**the** electronic data" must include "**at least a portion of an image transfer menu**" (the "Merging Step"). *See* **Exhibit A** at Claims 19 and 20.

18.     The Merging Step captures an inventive concept—a scanning device functionality that is unconventional over the prior art.

19.     The PTAB has construed "image transfer menu" in the following way, and Sapphire concurs with this definition:

> **PTAB construction of "image transfer menu**
>
> "[W]e determine the broadest reasonable interpretation of "**image transfer menu**," for purposes of this decision, to encompass a list, displayed on a screen of a first computing device, of **available functions selectable by a user, including a function that necessitates either one or both of transmitting image data and receiving image data**." (D.I. 13, Ex. A, pp. 12-14; emphasis added.; *see also* Court Report, 15 (FN 10) (the Court adopting this PTAB construction for purposes of resolving a Motion to Dismiss).

20.     The Merging Step therefore involves the merging of a scanned image with a portion of an image transfer menu, i.e. merging the scanned image with a menu function that was performed upon that scanned image.

21.     And the specification describes *how* the processor of the image transfer device merges the scanned image with a portion of the image transfer menu:

> **The specification shows how the processor of the image transfer devices merges the scanned image with a portion of the image transfer menu**
>
> "The CPU 20 then, in block T4, merges the bitmap with the image data from the reader 18 of the device 12 such that the image printed by the print head 28 on the sheet medium 102, block T5 of FIG. 9, includes the message "Confidential Document" in the desired location. A similar method may be used to add the time and date stamp, a company name, a logo or a watermark to images being transferred from the reader 18 to the print head 28 of the image transfer device 12." '633 Patent, 12:3-11; *see also id.*, Fig. 9; *see also* Court Recommendation, 17 (describing this citation as "one portion of the specification (in column where the concept of automatically merging a bitmap with downloaded image data (in a

> manner that might be akin to what is described in claim 19) is briefly addressed.")
>
> "In this embodiment of the present invention, some data 40 **used to effect image transfer with device 12 according to the enhanced menu features** is stored in the memory 34A of the computer 14. By way of example, **such data may include bitmaps representing time and date stamps, fixed messages, logos or watermarks to the added to the images** as well as the 45 coordinates for printing the bitmaps on sheet medium 102 (see FIG. 1)." ('633 patent, 11:40-46; emphasis added.)

22. The *Sapphire Crossings v. Quotient* Court explained in a Report and Recommendation denying a motion to dismiss that, at the pleadings stage, a bitmap can be a portion of an image transfer menu. *See* **Exhibit D** at 16 (FN 11) ("Nevertheless, for purposes of resolving the Motion, the Court will assume that a bitmap can be a portion of an image transfer menu.").

23. The image transfer device can therefore merge a scanned image with a portion of the image transfer menu (which can be a bitmap, i.e. the part of the menu visible to the user) by "superimposing the menu/bitmap on top of the scanned image." *See* **Exhibit D** at 16; *see also* **Exhibit A**, '633 Patent at 12:3-11.

24. This understanding of the Merging Step is fully consistent with the infringement contentions alleged here: the accused product automatically merges a scanned copy of a paper receipt (i.e. the scanned image) with the menu option offers to deposit that receipt (i.e. the "portion of an image transfer menu"). The portion of this menu option that is visible to the user is itself in image file that is similar to the bitmap image file described in the specification.

25. And the Declaration of Mansoor Anjarwala from the *Sapphire Crossing LLC v. Quotient Technology, Inc.* Case No. 1:18-cv-01717 (D. Del), attached hereto as **Exhibit E** and incorporated herein, further demonstrates that this inventive step captures a functionality that is unconventional over the prior art.

### EVERNOTE'S INFRINGING SYSTEM AND METHOD

26. Without authority from Sapphire Crossing, Evernote makes, uses (including by having its employees test), markets, sells, or otherwise provides an information transfer method that uses a reader for reading an image on a first medium, and a display for displaying an image transfer

menu to perform a selected function, i.e., Evernote's App (the "Accused Instrumentality"). *See* **Exhibit B** at 1.

27. As recited in Claim 19, the Accused Instrumentality uses a method for transferring information (e.g., image of the paper order form) from a first medium (e.g., paper business card) provides an image transfer device (e.g., smartphone) having a scanner (e.g., camera of the smartphone) for reading an image on the first medium. *See* **Exhibit B** at 2-3.

28. As recited in Claim 19, the Accused Instrumentality uses a method for transferring information from a first medium that reads the image on the first medium with the scanner. *See* **Exhibit B** at 3-4.

29. As recited in Claim 19, the Accused Instrumentality, upon information and belief, automatically uploads electronic data including at least a portion of an image transfer menu (e.g., the application will allow the user to enter the Name/Title/Company corresponding to the scanned image) to be displayed by the image transfer device (e.g., smartphone) to the transfer device from a computer (e.g., this information will be sent from an Evernote server) connected to the transfer device. *See* **Exhibit B** at 4.

30. As recited in Claim 19, the Accused Instrumentality allows a user to enter/edit the Name/Title/Company tied to a business card image that is being uploaded, and upon information and belief, in the case where a contact already exists and a user currently wants to add an image of a corresponding business card, the contact entry and its modifiable fields will be sent from an Evernote server to a user's mobile device. *See* **Exhibit B** at 4-7.

31. As recited in Claim 19, the Accused Instrumentality allows a user to enter/edit the Name/Title/Company tied to a business card image that is being uploaded. On information and belief, in the case where a contact already exists and a user currently wants to add an image of a corresponding business card, the contact entry and its modifiable fields will be sent from an Evernote server to a user's mobile device. The user can then add a business card image to the contact entry or edit any preexisting contact fields. As such, an image transfer menu (i.e. a contact entry and its modifiable fields, which include the option to add a business card image) is sent to an image

transfer device (e.g. a user's smartphone with the Evernote Application) from a computer connected to the transfer device (e.g. an Evernote server connected to a user's smartphone over the internet). *See* **Exhibit B** at 4-7.

32.  As recited in Claim 19, the Accused Instrumentality utilizes a processor (e.g., processor present in the smartphone) of the image transfer device to automatically merge the electronic data (e.g., the Phone Number/Email/Address etc. entered by a user) with the image (e.g. business card image) read by the scanner (e.g., camera of the smartphone). *See* **Exhibit B** at 7-10.

33.  The Accused Instrumentality must merge the particular Phone Number/Email/Address etc. with the image uploaded. *See* **Exhibit B** at 7-10.

34.  As recited in Claim 19, the Accused Instrumentality must merge the receipt image and Phone Number/Email/Address etc. and convert said the combined data to a medium appropriate for transmittal over the internet to a server. *See* **Exhibit B** at 10-13.

35.  As recited in Claim 20, the Accused Instrumentality includes electronic data (e.g., parts of the image transfer menu such as an contact entry and its modifiable fields) uploaded from the computer (e.g., an Evernote server) to the image transfer device (e.g., a user's smartphone) stays with the image transfer device (e.g., cache of the user's smartphone) after the computer is disconnected from the image transfer device (e.g. when a user's smartphone is disconnected from the server, such as when the device's cellular or Wi-Fi connection is turned off, any contact entry already accessed will still remain displayed on the smartphone). *See* **Exhibit B** at 13-16.

36.  On its website, www.evernote.com, Evernote specifically instructs its customers to use the Accused Instrumentality in a way that infringes Claims 19 and 20 of the '633 Patent. *See*, *e.g.*, https://help.evernote.com/hc/en-us.

**COUNT I: DIRECT INFRINGEMENT**

37.  Sapphire Crossing incorporates the above paragraphs herein by reference.

38.  As a result of making, using (including having its employees internally test and use the Accused Instrumentality as alleged below), marketing, and providing the Accused Instrumentality, Evernote has and continues to directly infringe Claims 19 and 20 of the '633 Patent

literally and/or under the doctrine of equivalents.

39. As set forth above, the Accused Instrumentality is specifically designed to perform every step of Claims 19 and 20 of the '633 Patent, and each use of the Accused Instrumentality will result in infringement of at least that claim.

40. Upon information and belief, Evernote has and continues to directly infringe Claims 19 and 20 of the '633 Patent, *inter alia*, when it internally tested and used the Accused Instrumentality.

41. Upon information and belief, Evernote's employees and/or individuals under Evernote's control use the Accused Instrumentality to test the operation of the Accused Instrumentality and its various functions, in the infringing manner described here, and thereby infringes Claims 19 and 20 of the '633 Patent. Sapphire Crossing therefore alleges that Evernote has and continues to directly infringe the '633 Patent by using the Accused Instrumentality to perform at least the method of Claims 19 and 20.

42. Upon information and belief, Evernote also has and continues to directly infringe Claims 19 and 20 of the '633 Patent when its employees use the Accused Instrumentality. Upon information and belief, Evernote's employees and/or individuals under Evernote's control use the Accused Instrumentality in an infringing manner and described in detail in the above section (INFRINGING SYSTEM AND METHOD). Sapphire Crossing therefore alleges that Evernote directly infringes the '633 Patent by using the Accused Instrumentality to perform the method of at least Claim 19.

43. Sapphire Crossing has suffered damages as a result of Evernote's direct infringement of the '633 Patent.

44. Sapphire Crossing is entitled to recover damages adequate to compensate it for such infringement in an amount no less than a reasonable royalty under 35 U.S.C. § 284.

45. Sapphire Crossing will continue to be injured, and thereby caused irreparable harm, unless and until this Court enters an injunction prohibiting further infringement.

**COUNT II: INDIRECT INFRINGEMENT**

46. Sapphire Crossing incorporates the above paragraphs herein by reference.

47. **Induced Infringement.** Evernote has also actively induced, and continues to induce, the infringement of Claims 19 and 20 of the '633 Patent by actively inducing its customers, including merchants and end-users to use the Accused Instrumentality in an infringing manner as described above.

48. Upon information and belief, Evernote has specifically intended that its customers use the Accused Instrumentality in a manner that directly infringes Claims 19 and 20 of the '633 Patent by, at a minimum, providing access to, support for, training and instructions for, the Accused Instrumentality to its customers, and thereby directs them to infringe Claims 19 and 20 of the '633 Patent, as described above (specifically, as described above in INFRINGING SYSTEM AND METHOD).

49. Evernote has been aware of the '633 Patent since at least the filing date of this Complaint, and, upon information and belief, knew since at least this date that the use of the Accused Instrumentality constitutes direct infringement of the '633 Patent.

50. Upon information and belief, at least one of Evernote's customers has used the Accused Instrumentality in a manner that infringes the '633 Patent since Evernote became aware of the '633 Patent and that the Accused Instrumentality infringes this patent.

51. **Contributory Infringement.** Evernote has also contributed to the infringement of Claims 19 and 20 of the '633 Patent by providing the Accused Instrumentality to, among others, its customers, and by advertising, promoting, encouraging, instructing and aiding others to use the Accused Instrumentality in an infringing manner.

52. Evernote has engaged in these activities knowing that the Accused Instrumentality is especially made and adapted for use, and is in fact used, in a manner that constitutes infringement of Claims 19 and 20 of the '633 Patent.  The Accused Instrumentality is not a staple article or commodity of commerce that is suitable for substantial non-infringing uses.

53. Since at least the filing date of this Complaint, Evernote has known that the use of the Accused Instrumentality infringes the '633 Patent, and that such combination of components has no substantial non-infringing use.

54. Sapphire Crossing has suffered damages as a result of Evernote's indirect infringement of the '633 Patent.

55. Sapphire Crossing is entitled to recover damages adequate to compensate it for such infringement in an amount no less than a reasonable royalty under 35 U.S.C. § 284.

56. Sapphire Crossing will continue to be injured, and thereby caused irreparable harm, unless and until this Court enters an injunction prohibiting further infringement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Sapphire Crossing prays for judgment against Evernote on all the counts and for the following relief:

A. A determination that Sapphire Crossing is the owner of the right to sue and to recover for infringement of Claims 19 and 20 of the '633 Patent;

B. A determination that Evernote has directly infringed, actively induced the infringement of, and/or contributorily infringed Claims 19 and 20 of the '633 Patent;

C. A determination that Evernote and its customers are jointly or severally responsible for the damages from infringement of Claims 19 and 20 of the '633 Patent through the use of the Evernote's App;

D. A determination that Evernote is responsible jointly or severally with its customers for the damages caused by the infringement of Claims 19 and 20 of the '633 Patent through the use of the Evernote App by Evernote's customers;

E. An accounting for damages under 35 U.S.C. § 284 for infringement of Claims 19 and 20 of the '633 Patent by Evernote, and the award of damages so ascertained to Sapphire Crossing together with interest as provided by law;

F. An award of Sapphire Crossing's costs and expenses;

G. An award of Sapphire Crossing's attorneys' fees; and

H.   Such other and further relief as this Court may deem proper, just and equitable.

Dated: May 29, 2020                    Respectfully submitted,

*/s/ Steven W. Ritcheson*
Steven W. Ritcheson, Esq. (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
*swritcheson@insightplc.com*

**Attorney for Plaintiff
Sapphire Crossing LLC**