Steven W. Ritcheson, Esq. (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
swritcheson@insightplc.com

Attorney for Plaintiff
*Sapphire Crossing LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAPPHIRE CROSSING LLC,<br><br>Plaintiff,<br><br>v.<br><br>EVERNOTE CORPORATION,<br><br>Defendant. | Case No. 5:20-cv-03593-EJD<br><br>**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**<br><br>**Judge:**  Yvonne Gonzalez Rogers<br>**Date:**  October 20, 2020<br>**Time:**  2:00 p.m.<br><br>[VIA ZOOM PLATFORM] |

1

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 4
II. LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS ............................................... 4
    A. General ............................................................................................................... 4
    B. Direct Divided Infringement ............................................................................. 5
    C. Marking Under 35 U.S.C. §287 ......................................................................... 6
III. STATEMENT OF FACTS .............................................................................................. 7
IV. ARGUMENT ................................................................................................................. 10
    A. Because There Are At Least Three Plausible Modes Of Infringement, Defendant's Motion Should Be Denied. ......................................................... 10
        1. Sapphire Specifically Alleged That Evernote "Provides An Image Transfer Device" Under A Theory Of Direct Divided Infringement. 10
        2. Sapphire's Allegation Of Internal Employee Testing Is Plausible And Sufficient At The Pleadings Stage. ...................................................... 11
        3. Evernote Plausibly Provides A Software Device That Directly Satisfies The "Image Transfer Device" Limitations. .......................................... 12
V. CONCLUSION .............................................................................................................. 13

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**

## Cases

*23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F.Supp.3d 889 (N.D. Cal. 2018) .......... 5

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018) ................................................ 5

*Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)  5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 5

*Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983) ....................... 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................. 5

*BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1379-81 (Fed. Cir. 2007) ............. 5

*Crown Packaging v. Rexam Beverage Can*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ........ 7

*Hanson v. Alpine Valley Ski Area, Inc.*, 718 F. 2d 1075, 1082-1083 (Fed. Cir. 1983) .... 6

*Levitt v. Yelp! Inc.,* 765 F.3d 1123 (9th Cir. 2014) ................................................... 5

*Mankes v. Vivid Seats Ltd.,* 822 F.3d 1302, 1305 (Fed. Cir. 2016) .............................. 6

*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025 (9th Cir. 2008) ................ 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005) ........................................................................... 6

*Nalco Co. v. Chem-Mod, LL*C, 883 F. 3d 1337, 1351-1354 (Fed. Cir. 2018) ................. 6

*SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010)  12

*Software Research, Inc. v. Dynatrace LLC*, 316 F.Supp.3d 1112 (N.D. Cal. 2018) ........ 5

*Travel Sentry, Inc. v. Tropp,* 877 F.3d 1370 (Fed. Cir. 2017) ..................................... 6

*Unwired Planet, LLC v. Apple, Inc.*, Case No. 13-cv-04134-VC (N.D. Cal. February 14, 2017)  7

Plaintiff Sapphire Crossing LLC ("Plaintiff" or "Sapphire"), by and through its attorney, files this Opposition to Defendant Evernote Corporation's ("Defendant" or "Evernote") Motion to Dismiss (Dkt. Nos. 28, 30) (the "Motion").[1]

## I.   INTRODUCTION

Defendant Evernote's Motion seeks dismissal based on three flawed grounds. First, Evernote argues that Sapphire's complaint fails to state a claim for direct infringement. Second, and relatedly, Evernote argues Sapphire's complaint fails to state a claim for divided infringement. However, Sapphire has included allegations that of at least direct divided infringement of the asserted method claims by Evernote during the testing of the accused product. Third, and finally, Evernote argues that Sapphire's complaint should be dismissed because Sapphire did not allege compliance with the patent marking requirements. However, Evernote fails to acknowledge that, at present, the asserted patent contains only method claims, which cannot be marked.

In sum, when evaluating Evernote's Motion, this Court should consider that Sapphire specifically alleged that Evernote "provides an image transfer device" under a theory of direct divided infringement and Sapphire's allegation of internal employee testing is plausible, and sufficient at the pleadings stage and Sapphire is not prohibited from seeking damages for infringement of its method claims. Evernote's Motion should therefore be denied.

## II.   LEGAL STANDARD FOR RULE 12(B)(6) MOTIONS

### A.   General

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

---

[1] Evernote first filed its Motion on August 24, 2020, before Judge Davila. However, Evernote refiled its motion before this Court on August 28, 2020, which included a re-notice. (Dkt. No. 28.) Plaintiff understands that the refiling of the motion would have triggered a response date for September 11, 2020. However, on March 28, 2020, the Court noted that Evernote's motion was filed incorrectly. The Clerk the "Set/Reset Deadlines" on March 31, 2020. (Dkt. No. 30.) Counsel for Plaintiff and Defendant have been in constant communication, and Defendant's counsel never discussed the date for filing Plaintiff's opposition. Plaintiff's counsel sent an email to Defendant's counsel on Friday, September 11, 2020, noting the potential confusion over the due date and informing counsel that Plaintiff understood the response was due on Monday, September 14, 2020, and asking if counsel had a different understanding. Defendant did not respond until the 14th by email in which they stated for the first time that the Opposition was due on September 11, 2020. There is no prejudice to either party if the Court considers the entirety of the briefing for this dispute, which is not set to be heard for more than one month.

4

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "When considering a motion to dismiss, the Court 'accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.'" *Software Research, Inc. v. Dynatrace LLC*, 316 F.Supp.3d 1112, 1116 (N.D. Cal. 2018) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The 9th Circuit's two-step process requires the allegations to do more than merely re-state elements of a cause of action and plausibly suggest that the requested relief justifies the expense of the litigation. *See 23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F.Supp.3d 889, 894 (N.D. Cal. 2018) (citing *Levitt v. Yelp! Inc.,* 765 F.3d 1123, 1134-1135 (9th Cir. 2014)). A court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint of which the Court may take judicial notice. *See Manzarek,* 519 F.3d at 1031; *see also*, *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018), *pet. for r'hrg en banc denied*, 890 F.3d 1354 (2018) ("the sources properly considered on a motion to dismiss [are] the complaint, the patent, and materials subject to judicial notice.").

### B.     Direct Divided Infringement

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.,* 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1379-81 (Fed. Cir. 2007)). The key inquiry, "[w]here more than one actor is involved in practicing the steps," is whether "the acts of one are ***attributable*** to the other such that a single entity is responsible for the infringement." *Id.* (Emphasis added). In *Akamai,* the Federal Circuit explained that an entity would be held responsible for the performance of method steps by others "where that entity directs or controls others' performance," or "where the actors form a joint enterprise." *Id.* The Federal Circuit also noted that, although the Court had previously held an actor:

5

> [L]iable for infringement under § 271(a) if it acts through an agent (applying traditional agency principles) or contracts with another to perform one or more steps of a claimed method . . . ***liability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance***.

*Id.* at 1023 (emphasis added) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005)).

As the Federal Circuit explained in *Travel Sentry, Inc. v. Tropp,* 877 F.3d 1370 (Fed. Cir. 2017), *Akamai* "broaden[ed] the circumstances in which others' acts may be attributed to an accused infringer to support direct-infringement liability for divided infringement, relaxing the tighter constraints on such attribution reflected in our earlier precedents." *Id.* at 1381 (alteration in original) (quoting *Mankes v. Vivid Seats Ltd.,* 822 F.3d 1302, 1305 (Fed. Cir. 2016)); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F. 3d 1337, 1351-1354 (Fed. Cir. 2018).

Federal Circuit caselaw makes clear that "no matter the relationship between the parties: we look for 'evidence that a third party hoping to obtain access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant.'" *Nalco*, 883 F.3d at 1351-1352 (quoting *Travel Sentry*, 877 F.3d at 1380.

### C.  Marking Under 35 U.S.C. §287

It is true that the patent laws contain provisions that require marking. *See* 35 U.S.C. §287(a). However, the Federal Circuit has confirmed that this requirement does not exist with respect to method claims, such as those that are at issue in this case ***and which are the only claims that exist in the asserted patent***.

For example, the Federal Circuit in *Hanson v. Alpine Valley Ski Area, Inc*., 718 F. 2d 1075, 1082-1083 (Fed. Cir. 1983) rejected defendant's argument that the asserted patent "also includes apparatus claim." *Id.* at 1083. The Court held that "[t]he only claims that were found infringed in this case, however, were claims 1, 2 and 6 of the Hanson patent, which are drawn to '[t]he method of forming, distributing and depositing snow upon a surface … ." *Id.* (Citation omitted.)  The Court continued to affirm that "[i]t is 'settled in the case law that the notice requirement of this statute does not apply where the patent is directed to a process or method.'" *Id.* citing and quoting *Bandag,*

*Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983).

Thereafter, the Federal Circuit in *Crown Packaging v. Rexam Beverage Can*, 559 F.3d 1308, 1316 (Fed. Cir. 2009), relying in part on *Hanson*, confirmed this principle.

> The law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method. *Bandag, Inc. v. Gerrard Tire Co.*, 704 F.2d 1578, 1581 (Fed. Cir. 1983). In *Hanson*, 718 F.2d at 1082-83, we held that 35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims. *Hanson* is factually identical to this case, and we are therefore bound by the rule of *Hanson*."

Although not addressed by Evernote in its motion, this principle has been steadily applied in this district. *See*, *e.g.*, *Unwired Planet, LLC v. Apple, Inc.*, Case No. 13-cv-04134-VC (N.D. Cal. February 14, 2017) (noting the Court previously granted summary judgment to plaintiff for defendant's marking defense; stating *Crown Packaging* "turns on the claims asserted …").

### III.    STATEMENT OF FACTS

U.S Patent Number 6,891,633 (the "'633 Patent") was originally issued to the Xerox Corporation on May 10, 2005, based on an application filed on July 30, 1999. (First Amended Complaint ("Compl."), ¶7.)  On November 25, 2015, Xerox assigned all right, title, and interest in and to the '633 Patent to Ruby Sands LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '633 Patent. (Compl., ¶10.)  On March 26, 2018, Ruby Sands LLC assigned all right, title, and interest in and to the '633 Patent to Sapphire Crossing LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '633 Patent. (Compl., ¶11.)  Accordingly, Sapphire Crossing possesses the exclusive right and standing to prosecute the present action for infringement of the '633 Patent by Defendant. (*Id.*)

The '633 Patent "relates to an image transfer system and, more particularly, to an image transfer system comprising a transfer device ***which can be operably connected to a computer***." (Col. 1, lines 5-10.) (Emphasis added.)   The Specification also discloses: "One object of the present invention ***is to provide a software and user interface (UI) solution for enriching personal and desktop copier feature sets*** by utilizing the processing power and memory capacity of a connected

personal computer." (Col. 1, lines 21-38.) (Emphasis added.)

The system generally may include a reader for reading an image on a first medium, and a display for displaying an image transfer menu for effecting transfer of the image to perform a selected function. (Compl., ¶12.) For example, the reader can be a mobile electronic device used to take a photograph of a first medium (for example, a receipt), and then offer on the display of the mobile electronic device a menu of different actions that can be selected to accomplish a particular task: for example, get cash rebates from digital coupons based on scanned receipts. (*Id.*) A downloadable app can transform the mobile device into the claimed image transfer device. (*Id.*) Without the app, the mobile device cannot display the first type of menu, read the receipt, establish a connection with a computer, transfer the image to the computer, or display the second type of menu. (*Id.*)

The claimed methods of the '633 Patent are disclosed as utilizing software as a "transfer device" to perform the claimed methods. (Col. 2, lines 4-33.) For example, the Specification discloses "a method for enhancing operating features of a transfer device." (*Id.*, lines 18-20.) Specifically:

> The transfer device is adapted for transferring information from a first medium to a second medium. The ***method comprises the steps of providing a first command menu of the transfer device, connecting a computer to the transfer device, and with the computer enabling the device to display a second command menu***. The first command menu represents a first set of the operating features of the transfer device. The first menu is available for display on a display of the device when the computer is not connected to the transfer device. When the computer is connected to the transfer device, the computer enables the device to display the second command menu. The second command menu represents a second set of the operating features of the transfer device. The second set of operating features has expanded operating features in comparison to the fist set of operating features of the transfer device.

(Col. 2, lines 16-33.) (Emphasis added.)

The '633 Patent also states:

> It should be understood that the foregoing description is only illustrative of the invention. Various alternatives and modifications can be devised by those skilled in the art without departing from the invention. Accordingly, the present invention is intended to embrace all such alternatives, modifications and variances which fall within the scope of the appended claims.

8

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**

(Col. 15, lines 42-48.)

The '633 Patent was the subject of proceedings before the U.S. Patent Trial & Appeal Board ("PTAB"), after which only two claims remained in the '633 Patent: Method Claims 19 and 20. (Compl., ¶¶7-9.) Claim 19 reads:

> 19. A method for transferring information from a first medium, the method comprising the steps of:
>
> providing an image transfer device having a scanner for reading an image on the first medium;
>
> reading the image on the first medium with the scanner;
>
> automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;
>
> with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and
>
> transferring the merged image by the transfer device to a second medium.

Claim 20 reads:

> 20. A method in accordance with claim 19, wherein the electronic data uploaded from the computer to the image transfer device stays with the image transfer device after the computer is disconnected from the image transfer device.

Although certain claim limitations included in the claims have been construed by the PTAB, Claims 19 and 20 have not been previously construed in their entirety.

In this case, Plaintiff has alleged that "[w]ithout authority from Sapphire Crossing, Evernote ***makes, uses (including by having its employees test), markets, sells, or otherwise provides an information transfer method*** that uses a reader for reading an image on a first medium, and a display for displaying an image transfer menu to perform a selected function, i.e., Evernote's App (the 'Accused Instrumentality')." (Compl., ¶26.) (Emphasis added.) Moreover, Plaintiff has alleged that, "[o]n its website, www.evernote.com, Evernote specifically instructs its customers to use the Accused Instrumentality in a way that infringes Claims 19 and 20 of the '633 Patent. *See*, *e.g.*, https://help.evernote.com/hc/en-us." (Compl., ¶41.)

## IV. ARGUMENT

### A. Because There Are At Least Three Plausible Modes Of Infringement, Defendant's Motion Should Be Denied.

#### 1. Sapphire Specifically Alleged That Evernote "Provides An Image Transfer Device" Under A Theory Of Direct Divided Infringement.

Sapphire provides detailed documentation and analysis to demonstrate that Evernote satisfies this limitation (the "Image Transfer Device Limitation"). For example, Sapphire referenced Evernote's own video tutorial depicting how users are instructed to operate the image transfer device to quickly scan documents, such as business cards. (Compl., Ex. B ("Claim Chart"), p. 2. Sapphire also explains how this use of Evernote's software device infringes the Image Transfer Device Limitation. Claim Chart, pp.2-3 ("The method for transferring information (e.g., image of the paper receipt) from a first medium (e.g., paper receipt) provides an image transfer device (e.g., software that is intended for installation on a smartphone) having a scanner (e.g., software interface to control a camera of the smartphone) for reading an image on the first medium.").

Beyond explaining how Evernote's app satisfies the Image Transfer Device Limitation, Sapphire explains how Evernote's app directs and controls the image transfer device such that Evernote is liable for direct divided infringement under *Akamai*. (Compl., ¶¶26-36.) As shown in the Claim Chart, the Evernote Application completely controls, through its software, operation of the image transfer device in the smartphone, which allows a user to scan a business card. The Evernote Application therefore exercises complete direction and control over the operation of the smartphone camera. Additionally, Evernote requires its users to, through the Evernote App, use the smartphone camera in a manner that will always infringe this step of the method. As such, Evernote conditions participation in using this central Application feature upon performing a step that satisfies this limitation.[2]

Evernote fails to challenge the plausibility of these allegations—that Evernote's software device – its app – directs and controls the image transfer device which is "provided" to users along

---

[2] To the extent the Court believes it is necessary, Sapphire can add additional facts supporting these allegations via amendment to its Complaint.

10

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**

with Evernote's software. Rather, Evernote suggests that it can somehow direct and control the image transfer device without "providing" it. This argument fails for several reasons.

First, Evernote is directing and controlling the "provision" of the image transfer device by directing and controlling its scanning function, as alleged. The Evernote software prompts the user to scan a series of receipts. After scanning is completed, the scanning function is turned off within the app. See, e.g., Claim Chart, 2-3. In other words, the Evernote app can both turn on and off access to the image scanning device, thereby determining how and when the device is provisioned to the user.

Second, Evernote hinges its entire argument on some novel, unstated construction of "providing". The plain and ordinary meaning of "providing" should at least include "offering access to the device's functionality"—which the Evernote app does by prompting the user to scan receipts. Instead, Evernote appears to require that the "provider" be a manufacturer or seller of the device. Regardless, the Rule 12 stage cannot resolve claim term disputes—this Court should reject Evernote's argument for this reason alone.

### 2. Sapphire's Allegation Of Internal Employee Testing Is Plausible And Sufficient At The Pleadings Stage.

Evernote ignores many of Sapphire's allegations in its complaint. Sapphire explains, through the Claim Chart, how Evernote's software infringes all limitations of the asserted claims. Most importantly, Evernote is a mobile app company that employs software developers. It is entirely apparent that when Evernote is "having its employees internally test and use" the accused Evernote App, the testing involves debugging the App to confirm that it functions properly. (Compl., ¶¶43-47.) This would, in turn, require that the employees use the app in a manner than infringes the asserted claims, as alleged in the Claim Chart and the First Amended Complaint.

Specifically, Sapphire alleges that "[a]s a result of making, ***using (including having its employees internally test and use the Accused Instrumentality as alleged below***), marketing, and providing the Accused Instrumentality, Evernote has and continues to directly infringe Claims 19 and 20 of the '633 Patent literally and/or under the doctrine of equivalents." (Compl., ¶38.) (Emphasis added.)   Thereafter, Sapphire alleges that "[a]s set forth above, the Accused

Instrumentality is specifically designed to perform every step of Claims 19 and 20 of the '633 Patent, and each use of the Accused Instrumentality will result in infringement of at least those claims." (*Id.*, ¶39) Moreover, "Evernote has and continues to directly infringe Claims 19 and 20 of the '633 Patent, *inter alia*, when it internally tested and used the Accused Instrumentality." (*Id.*, ¶40) Sapphire also alleges in paragraph 41 (emphasis added):

> Upon information and belief, ***Evernote's employees and/or individuals under Evernote's control use the Accused Instrumentality to test the operation of the Accused Instrumentality and its various functions, in the infringing manner described here***, and thereby infringes Claims 19 and 20 of the '633 Patent. Sapphire Crossing therefore alleges that Evernote has and continues to directly infringe the '633 Patent by using the Accused Instrumentality to perform at least the method of Claims 19 and 20.

And in paragraph 42, Sapphire alleges (emphasis added):

> Upon information and belief, ***Evernote also has and continues to directly infringe Claims 19 and 20 of the '633 Patent when its employees use the Accused Instrumentality***. Upon information and belief, Evernote's employees and/or individuals under Evernote's control use the Accused Instrumentality in an infringing manner and described in detail in the above section (Infringing System and Method). Sapphire Crossing therefore alleges that Evernote directly infringes the '633 Patent by using the Accused Instrumentality to perform the method of at least Claim 19.

Accordingly, although these allegations have been ignored by Evernote in its motion, Sapphire has sufficiently pled single actor infringement, through Evernote's internal employee testing.

### 3. Evernote Plausibly Provides A Software Device That Directly Satisfies The "Image Transfer Device" Limitations.

Moreover, claim construction in this case could reasonably conclude that the Evernote software app comprises an "image transfer device" as required by the Asserted Claims. Specifically, Sapphire sells a software device – its app – that automatically performs the steps of the asserted claims. In *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319 (Fed. Cir. 2010), the Federal Circuit held that direct infringement may be found in such circumstances.

In *SiRF*, the Court found that an accused infringer who performed some steps of a method directly and sold GPS receivers that performed the remaining steps automatically directly infringed a method claim. *See* 601 F.3d at 1329-31. Further, it found that although the users of the GPS

12

receivers had to enable the accused functionality, the steps were performed automatically after enablement without possible modification by the user. *Id*.

The language of Claims 19 and 20 supports the conclusion that the "image transfer device" may be, but need not be, a computer (e.g., smartphone). This limitation may be met by a software application that provides a connection for scanner functionality (*i.e.* "an image transfer device [app] having a scanner for reading [software interface]"). Moreover, the specification of the '633 Patent leaves open the possibility of a software device being used to satisfy the "image transfer device" limitation. (*See, e.g.,* col. 1, line 56-col.2, line3; col. 2, lines 17-33.)

Again, the Rule 12 stage cannot resolve claim term and infringement disputes – such as whether a software device [app] satisfies the "image transfer device" limitation literally or under the doctrine of equivalents – this Court should reject Evernote's motion for this reason alone.

## V.   CONCLUSION

Sapphire requests that this Court deny Evernote's Motion to Dismiss. Alternatively, Sapphire requests leave of Court to file an amended complaint to add additional facts in support of its direct infringement claim against Evernote.

Dated: September 14, 2020                    Respectfully submitted,

*/s/ Steven W. Ritcheson*
Steven W. Ritcheson, Esq. (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
swritcheson@insightplc.com

**Attorney for Plaintiff**
**Sapphire Crossing LLC**

**PLAINTIFF SAPPHIRE CROSSING LLC'S OPPOSITION TO DEFENDANT EVERNOTE CORPORATION'S MOTION TO DISMISS**